UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLO VARTINELLI,

        Plaintiff,        CIVIL NO: 07-12388

                                    DISTRICT JUDGE MARIANNE O. BATTANI
                                    MAGISTRATE JUDGE STEVEN D. PEPE
vs.

RICHARD CADY, RICHARD STAPLETON, M HALL,
FRED PARKER, JIM ARMSTRONG, SHERRY BURT,
PATRICIA CARUSO, GREG HISSONG, ALFRED JONES,
REY PATINO, R HALSEY, AMADOR YBARRA, STEWART,
GORDON MACLEAN, A FAGHIHNIA, R MONROE, J RICCI,
VALERIE HAMMOND, BETTY GLASPER, RON GREEN,
ELLISWORTH, MARY JO MARSHALL, S CAMPBELL, CAROL VALLIE,
GREGORY NAYLOR, C HUTCHINSON, CORRECTIONS MEDICAL
SERVICES,

        Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS CRAIG HUTCHINSON, M.D. AND
CORRECTIONAL MEDICAL SERVICES, INC.'S MOTION TO DISMISS (DKT. #46)**

This is a *pro se* prisoner lawsuit under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment and Americans with Disabilities Act ("ADA"). At the time of the incidents involved in the case, Plaintiff was incarcerated in Jackson, Michigan, at the Southern Michigan Correctional Facility ("JFM") of the Michigan Department of Corrections ("MDOC"). Plaintiff alleges that, while incarcerated at JFM, Defendants violated his Eighth Amendment rights by not providing him a special diet needed because of his allergies to fish, fish odor, milk and peanut butter. Plaintiff seeks in excess of $100,000 in compensatory and punitive damages among other claims for relief (Complaint, p. 19, 20).

1

On April 9, 2008, Defendants Craig Hutchinson, M.D., and Correctional Medical Services, Inc. ("CMS") filed a motion to dismiss based on failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted (Dkt. #46). All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #27). For the reasons stated below, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**.

I. **BACKGROUND**

Plaintiff alleges that he is allergic to fish, fish odors, milk and peanut butter. He claims that his Eighth Amendment rights have been violated when medical staff at JFM did not prescribe him a fish-free diet and instead served him milk and peanut butter. Plaintiff has no formal medical record indicating these allergies and he declined allergy testing offered by Defendant Correctional Medical Services ("CMS")(Dkt. #34, Release of Responsibility, Ex. A). Plaintiff filed several grievances related to his alleged allergies and his treatment by food services and medical services.

There are three references in the record to a medical detail indicating Plaintiff's alleged allergies and special diet:

> 1.) A May 19, 2003, Special Accommodation Notice prescribing a Therapeutic Diet accommodation of "vegetarian tray when fish is served" (Complaint, Ex. 2, p. 1).
>
> 2.) A February 25, 2004, Medical Detail instructing a "vegetarian tray when fish, dairy products, peanuts, peanut butter served" (Complaint, Ex. 2, p. 2).
>
> 3.) A December 13, 2004, Defendant Greg Hissong response to Grievance No. JMF-2004-12-2542-09d, in which he notes that Defendant Valerie Hammond, R.N., from JMF Health Care stated on December 10, 2004, that Plaintiff "does not have a prescribed medical diet detail but a medical detail stating 'fish free meals, meal to unit when fish is served'" (Complaint, Ex. 4, p. 2).
> The Hissong response noted also that Hammond stated that "Food Service does not have

a specific prescribed diet detail" for the Plaintiff and that Plaintiff was "not allergic to cheese or

2

peanut butter per the medical chart" (*id.*). Plaintiff had complained about receiving "cold bagged-bologna sandwiches" and asserted he had a vegetarian diet (*id.* at 4-5). Defendant Hissong's response notes that Ms. Hammond saw no issue with Plaintiff being provided a bagged meal when fish was served to the other inmates (*id.* at 2). Yet Plaintiff's Exhibit #2, in item 2.) above, is a *vegetarian* tray medical detail "when fish, dairy products, peanuts, peanut butter served."

Plaintiff identified Dr. Hutchinson and CMS as Defendants in the "The Defendants" section at the beginning of his Complaint. With respect to Dr. Hutchinson, Plaintiff alleges that he was employed by the MDOC's Health Care Provider at all times relevant to this case and that he is responsible for the authorization, delivery and enforcement of medical policies concerning prisoners' medical needs on behalf of the State. Plaintiff further alleges that Dr. Hutchinson was directly and personally involved with the issues alleged in this case (Complaint, p. 8, ¶ 34). With respect to Defendant CMS, Plaintiff alleges that it is a private company contracted to provide medical services to prisoners on behalf of the state (Complaint, p. 9, ¶ 34). Plaintiff further alleges that CMS is directly and personally responsible for the quality of medical health care services delivered to prisoners, has the exclusive power to authorize specialized medical treatment, and carries the final decisional discretion concerning prisoners' medical needs (*id.*).

Aside from describing Defendants, Dr. Hutchinson and CMS, in the introductory portion of his Complaint, Plaintiff sets forth no further allegations as to any of them, and, in fact, does not even mention them anywhere else in the Complaint. Plaintiff also references grievances in his Complaint, which he allegedly filed prior to filing the present case. Plaintiff attached copies of each of these grievances as Exhibits 3 through 13 (Complaint, Exhs. 3-13).

3

Plaintiff has filed several grievances, but only nine have been pursued to Step III (Dkt. #34, Grievance Inquiry Screen, Ex. C). Plaintiff has also attached two other grievances, JMF-04-11-24-09d and JMF-05-04-631-09z, which were not pursued to Step III. Grievance No. JMF-04-11-24-09d, filed November 30, 2004, alleges Food Service's indifference towards accommodating his special dietary needs (Complaint, Ex. 3). Grievance No. JMF-05-04-631-09z, filed on April 12, 2005, claims that Plaintiff is going hungry because food services refused to grant him his alleged medically prescribed diet (Complaint, Ex. 10). Because Plaintiff did not pursue these two grievances to Step III he has failed to exhaust these claims.[1]

On December 7, 2004, Plaintiff filed Grievance No. JMF-2004-12-2542-09d, against Food Service alleging they acted with deliberate indifference and interfered with his prescribed diet (Complaint, Ex. 4, p. 1). This grievance also names Jacobs, Slater, Daymon, "nurse," and Stewart. Plaintiff complained about an allergic reaction to food served to him – cheese and peanut butter – and that he had only been served five bagged lunches from October 24, 2004, through the date of the grievance. The Step I grievance response noted there was no prescribed medical diet on file for the Plaintiff, only a detail noting, "fish free meals, meal to unit when fish is served" (*id.* at 2).

On December 9, 2004, Plaintiff filed Grievance No. JMF-2004-12-2603-12d4, against Dr. Faghihnia after the physician cancelled special diet details because he found no indication Plaintiff was actually allergic to fish, peanut butter, milk or wool (Complaint, Ex. 5, p. 1). The Step I response indicated that Dr. Faghihnia cancelled any special diet related to milk and peanut

---

[1] The Supreme Court notes that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006).

butter, but left the accommodation for a non-wool blanket because he found a recommendation for it in Plaintiff's file (*id.* at 2). Plaintiff also alleges the doctor cancelled his necessary medications as well (Complaint, p. 11, ¶ 40). The Step III grievance response indicates the Plaintiff's medical conclusions were based on medical evaluations and that a disagreement with the medical judgment does not equate a denial of care (Complaint, Ex. 5, p. 8).

On December 10, 2004, Plaintiff filed Grievance No. JMF-2004-12-2573-11e, against Greg Hissong, the Food Service Director, for not meeting Plaintiff's dietary needs and for recommending he see medical staff to discuss a special diet (Complaint, Ex. 6, pgs. 1-2). Plaintiff also complains that Hissong saw his medical file without consent. The grievance also names Dr. Faghihnia and "dieticians" (*id.*). The Step I grievance response states Plaintiff's grievance was denied, indicating that policy was followed, which allows for the Health Care Department to discuss pertinent medical information regarding dietary needs with the Food Service Director, and that Plaintiff had not shown any evidence that he actually had food allergies (Complaint, Ex. 6, p. 4).

On March 1, 2005, Plaintiff filed Grievance No. JMF-2005-03-373-12d4, indicating that he had a lawsuit pending against Dr. Faghihnia and would like someone else to handle his health care (Complaint, Ex. 8, p. 1). Dr. Faghihnia had issued an order to transfer Plaintiff to a housing unit without a microwave to placate Plaintiff who claimed he was allergic to the smell of fish, which gets cooked in housing unit microwaves (*id.*). Plaintiff complained that the only such unit was in a higher security level. Plaintiff was granted his request for a change of treaters and was reassigned to the care of the physician assistant (*id.* at 2).

On April 4, 2005, Plaintiff filed Grievance No. JMF-2005-04-571-09z, alleging he was not served lunch in his unit on March 30, 2005, and that his spaghetti served later that day was contaminated with fish and caused an allergic reaction (Complaint, Ex. 9, p. 1). The grievance names Potter, Jeff, and "warden," but does not relate the grievance against any specific person. The Step I response indicates that the Plaintiff's lunch was delivered and no fish was cooked for dinner that day (*id.* at 2). It also states that there was no evidence Food Service was contaminating Plaintiff's meals prior to it leaving Food Service (*id.*).

On April 4, 2005, Plaintiff filed Grievance No. JMF-2005-04-585-17z, complaining that food was not being delivered to his unit. Plaintiff refused to go to the chow hall for fear there would be fish present (Complaint, Ex. 7C). Plaintiff also contends he received no meal on March 30, 2005 (*id.*). The grievance names Johnston, Ellisworth, Potter, Faghihnia, Stuart, "warden," and Thompson. The Step I response states that investigation revealed the meals were taken to Plaintiff but he refused them (*id.* at 2).

On April 28, 2005, Plaintiff filed Grievance No. JMF-2005-04-737-12d2, in which he complains that he kited healthcare regarding back pain on April 19, 2005, but did not receive an appointment until April 26 (Complaint, Ex. 12, p. 1). Moreover, Plaintiff states he was diagnosed with shingles and blames the prison for the exposure (*id.* at 1-3). This grievance names Peckham, Health Services, 'nurse,' Patino, Burt, Long, Gregurek and Faghihnia. The Step I and Step II responses explained the delay but the Step III response agreed with Plaintiff that the delay should not have occurred (*id.* at 7).

On April 13, 2005, Plaintiff filed Grievance No. JMF-2005-04-644-17a, complaining that he received a bagged lunch containing dairy products and a cold-bagged lunch for dinner

6

(Complaint, Ex. 11, p. 1). The grievance specifically names CO Anderson for determining what Plaintiff can medically eat and drink. The grievance also names Slator, Stuart, and Hissong. The Step I response indicated that Food Service was preparing the Plaintiff's meals and that the Plaintiff's allegations regarding conversations that he had were false (*id.* at 2).

On May 18, 2005, Plaintiff filed Grievance No. JMF-2005-05-860-03d, addressing several issues. He first complains that he suffered an allergic reaction while in segregation for his refusal to move to a new cell. Dr. Faghihnia had ordered the move to a new cell without a microwave because the Plaintiff complained that microwaved fish could kill him (Complaint, Ex. 13, p. 1). Defendants Faghihnia and Hall are named in the grievance; the former for issuing the medical detail and the latter for attempting to move the Plaintiff. Long and Jeff are also named. The Step I response indicated the staff was following the medical detail in moving the Plaintiff and no harm would have resulted in the move (Complaint, Ex. 13, p. 1). Plaintiff was issued a major misconduct ticket for refusing to pack up his property and move cells when ordered to do so (Complaint, Ex. 14, 14A, 14B).

## II. ANALYSIS

### A. The Legal Standards

1. Summary Judgment Standards

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue

as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

   2. Exhaustion Requirements

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." As noted above the PLRA requires a prisoner to follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper

8

exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."

*Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

In *Jones*, the Supreme Court held that the PLRA does not require that a prisoner name all of the defendants in his grievances. *Jones*, 127 S Ct at 922. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923. *Jones*, however, was based on a previous version of MDOC Policy Directive 03.02.130 that did not require that prisoners list names of potential defendants in their grievances. *Id.* at 916 (discussing policy

effective November 1, 2000). Yet, that policy directive was changed prior to Plaintiff filing his Complaint or grievances. The MDOC has specific administrative procedures that prisoners must follow to exhaust their administrative remedies.

MDOC Policy Directive 03.02.130 lays out a three-step process that prisoners must complete before being considered to have exhausted their claims (Dkt. #34, Ex. D, MDOC PD 03.02.130 (Effective December 19, 2003)). There are specific rules in PD 03.02.130 (such as time frames and content policies) that prisoners must follow, or else they face having their grievances rejected. Section T of P.D. 03.02.130 requires prisoners to include names of potential defendants in their grievances.

     **B.**     **<u>Factual Analysis</u>**

As noted above, Plaintiff has filed and pursued nine grievances through Step III of the process. Those grievances only named three of the thirteen MDOC Defendants consistently throughout each grievance as being responsible for Plaintiff's alleged injuries. Defendants Dr. Hutchinson and CMS were not among the three Defendants named to Step III of the grievance process. The fact that the MDOC did not reject Plaintiff's grievance for failing to name certain Defendants is not a waiver of the requirements of Section T of P.D. 03.02.130 that specific names be included. Where a prisoner fails to name all of the potential defendants, the MDOC has no way of knowing that names have been left out until the prisoner later files his lawsuit. It is the prisoner, and not the prison, that is in the best position to determine who is being accused of wrongdoing with regard to any alleged incident.

In his Response, Plaintiff claims that he exhausted his administrative remedies in this case (Dkt. #50, p. 3-4). He alleges that Defendants' argument that his failure to name CMS and

Dr. Hutchinson in any grievance amounts to a failure to exhaust is patently contrary to "well established law" as stated in *Jones v. Bock*, 127 S. Ct. 910 (2007). Plaintiff's understanding of *Jones*, however, is incorrect.

In the case of *Jones v. Bock*, the Court held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 127 S. Ct. at 923. In so holding, however, the Court clarified that it is "the prison's requirements . . . that define the boundaries of proper exhaustion." *Id.* Although the grievance policy at issue in *Jones* did not require a grievant to specifically name each individual in the grievance, the more recent grievance policy at issue in the present case does contain such a requirement (Dkt, #46, Ex. A, MDOC Policy Directive 03.02.130, ¶ T). Because Plaintiff failed to comply with this requirement by not naming Defendants CMS and Dr. Hutchinson in any of the grievances that he pursued to Step III, he failed to properly exhaust his administrative remedies prior to filing this suit. *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006); *Jones*, 127 S. Ct. at 923. Therefore, his claims must be dismissed as they are barred by 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

s/Steven D. Pepe  
United States Magistrate Judge

Dated: December 10, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 10, 2008.

s/V. Sims  
Case Manager